## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

**JONIA GREEN,**

      **Plaintiff,**

**vs.**                      **Case No. 3:20-cv-05957-MCR-MAF**

**KILOLO KIJAKAZI,**
**Acting Commissioner of the**
**Social Security Administration,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This Cause comes before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's Title II application for a period of disability and disability insurance benefits under the Social Security Act. After careful consideration of the record, for the reasons stated below, the decision of the Commissioner should be AFFIRMED.

## I.    Procedural History

On or about May 20, 2019, Plaintiff, Jonia Green, filed an application for a period of disability and disability insurance benefits alleging his disability began on January 6, 2016, but then later amended the onset date to January 5, 2017. Tr. 15, 41. Plaintiff alleged he became disabled because of

post-traumatic stress disorder (PTSD), headaches, neck pain, back pain, bilateral shoulder pain, vision problems, hearing loss, knee problems, and foot pain. Tr. 38, 217.

On August 20, 2019, the agency initially denied Plaintiff's claim and upon reconsideration on October 23, 2019. Tr. 102-04, 107-08. Plaintiff requested an administrative hearing. Tr. 121. Administrative Law Judge (ALJ), Tracy Guice, presided over the telephonic hearing on June 5, 2020. Tr. 35-64. Plaintiff was represented by counsel. Id. Plaintiff and Jody Skinner, an impartial vocational expert (VE), testified at the hearing. Tr. 38-59 (Plaintiff's testimony); Tr. 59-63 (Skinner testimony); Tr. 256-57, 59-60 (Skinner resume). Also, during the hearing, the ALJ admitted medical records and other exhibits relating to Plaintiff's claims, specifically, "1-A through 6-A, 1-B through 9-B, 1-D through 11-D . . . 1-E through 18-[E] [1] and . . . 1-F through 11-F." Tr. 37-38.

On September 28, 2020, the ALJ issued a decision denying Plaintiff's application for benefits. Tr. 15-33. The ALJ purportedly considered "all the evidence," including Plaintiff's medical records, and found that Plaintiff was

---

[1] Although at the hearing, the ALJ stated "18-D," there is no "18-D" exhibit in the record; there is "1-D through 11-D." Tr. 165-206. However, there are exhibits from 1-E through 18-E." Tr. 207-61. It is reasonable to assume that the hearing transcript stating "through 18-D" is either a scrivener's error or a misstatement by the ALJ. Tr. 37-38.

not disabled. Tr. 16, 29. Plaintiff requested a Review of Hearing Decision on or about September 28, 2020. Tr. 162-64. On November 16, 2020, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. Plaintiff filed his complaint with this Court on November 25, 2020. ECF No. 1. Defendant filed an answer on July 12, 2021. ECF No. 11. The parties filed memoranda of law, which have been considered. ECF Nos. 16, 19.

## II.   Plaintiff's Claims

Plaintiff claims that the Commissioner's decision should be reversed because the ALJ failed to closely scrutinize Plaintiff's VA rating and did not articulate the requisite good cause necessary to discredit the medical opinion of Plaintiff's treating physician, Jennifer Brooks, Ph.D. ECF No. 16, p. 2. Plaintiff maintains that the ALJ failed to apply the correct legal standards to his VA disability ratings and did not provide specific reasons for discounting the VA's disability determination. Id., p. 7. The ALJ rejected the VA decision because Plaintiff's "disability rating is inconsistent" with much of the objective medical evidence but failed to articulate that the 100% disability rating should have been more closely scrutinized and should have explained why she deviated from the required standard. Id., p. 8-9.

Plaintiff claims that the ALJ's determination that he has the residual functional capacity to perform light work is inconsistent with the limitations set forth by Dr. Brooks, the treating physician, and the medical evidence, as a whole. Id., pp. 10-11. Plaintiff seems to rely on the medical source statement completed by Dr. Brooks' purporting that he had certain marked limitations and deficiencies stemming from his PTSD, his condition could be expected to last twelve months or longer, and he would likely miss four or more days of work per month. Id., pp. 11-12. Plaintiff believes this is inconsistent with the ability to perform full-time continuous employment. Id., p. 11. Plaintiff argues the ALJ failed to articulate the requisite good cause or provide a sufficient rationale for discrediting Dr. Brooks' opinion. Id., p. 14.

According to Plaintiff, the Court should reverse the finding that he is not disabled or remand the case for further proceedings. Plaintiff also seeks attorney's fees.

## III. Commissioner's Claims

The Commissioner argues that because Plaintiff filed his claims after March 27, 2017, the ALJ applied a new set of regulations -- 82 Fed. Reg. 15, 132 (Mar. 27, 2017); 20 C.F.R. §§ 404.1504, 404.1520c (2020). ECF No. 19, pp. 11-13. Under the revised regulations, an ALJ is not required to provide any analysis regarding the VA's disability rating, relying on 20 C.F.R.

§§ 404.1504, 404.1520b(c), (c)(1). Id., p. 12-13. Because Plaintiff does not acknowledge the revised regulations, presents no argument that the new regulations are arbitrary or capricious, or they exceed the Commissioner's rule making authority, he waived any arguments on those issues. Id., p. 13. Still, the ALJ discussed the disability rating, provided an explanation as to why she found it inconsistent with the overall evidence and noted she did not discuss evidence that is not inherently valuable or persuasive. Id. The Commissioner maintains that the ALJ properly considered the VA medical records as required and that further analysis of the disability rating was not required under the applicable regulations. Id., p. 15.

The Commissioner relies on 20 C.F.R. § 404.1520c(a): ALJ's "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's own] medical sources." Id., pp. 15-16. ALJ considers the persuasiveness of medical opinions and explains the factors of supportability and consistency. The Commissioner maintains that the ALJ pointed out "blatant inconsistenc[ies] between the marked limitations and the observations that Plaintiff had sufficient cognitive function to drive safely, carry a gun, understand what was discussed in therapy, and care for his child." Id., p. 17.

## IV.    Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1986). This Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, 703 at 1239 (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).[2]

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied,

---

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

and determine the reasonableness of the factual findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-24 (2002). In addition, an individual is entitled to disability insurance benefits (DIB) if he is under a disability prior to the expiration of his insured status. See 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211.

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[3]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant

---

[3] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered her decision. See generally Bagliere v. Colvin, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant satisfies this burden of demonstrating he cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. See Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007).

As the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of record and resolve conflicts that might appear. 20 C.F.R. § 404.1527. When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment

relationship; (2) the evidence in support of the opinion, such as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight\ that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors. 20 C.F.R. § 404.1527(b) & (c)(1)-(6).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). Further, the ALJ must give a treating physician's opinion "substantial or considerable weight" absent "good cause." Id. (quotation marks omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). "'[A]

medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.'" Id. (citing Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

"The ALJ may discount the treating physician's opinion if good cause exists to do so." Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis, 125 F.3d

at 1440; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). Further, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). However, if the decision of the ALJ is explained and relies on evidence in the record it should be upheld. "We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." Hunter v. Soc. Sec. Admin. Comm'r, 808 F.3d 818, 823 (11th Cir. 2015).

## V.   Legal Analysis

### A. Findings of the Administrative Law Judge (ALJ)

The Court begins its analysis by first outlining the ALJ's determinations. The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 6, 2016, the alleged onset date. Tr. 18. The ALJ found that Plaintiff had "the following severe impairments: posttraumatic stress disorder (PTSD); major depressive disorder; mild sensorineural hearing loss, bilaterally; lumbar degenerative disc disease; bilateral shoulder

degenerative joint disease; migraine headaches; and obesity." Id. Plaintiff does not appear to contest these findings.

The ALJ also found that Plaintiff's cataracts, bilateral foot and knee pain were "not severe impairments." Id. Plaintiff does not appear to contest this determination.

The ALJ made other findings. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id. Specifically, the ALJ stated "[n]o examining or treating source nor any medical expert reported that the [Plaintiff] has an impairment that meets or medically equals a medical impairment per the listings. Id. In addition, the ALJ explained that "[t]o satisfy the 'paragraph B' criteria, the mental impairments must result in one extreme or two marked limitations in a broad area of functioning" which are understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Tr. 19-20.

The ALJ found Plaintiff had no more than "moderate limitations" in his abilities to learn, his ability to understand, remember or apply information. Tr. 19. Similarly, Plaintiff has moderate limitations in interacting with others;

concentrating, persisting, or maintaining pace; and adapting or managing himself. Id. Accordingly, the ALJ found:

> Because [Plaintiff's] mental impairments do not cause at least two "marked" limitations or one "extreme limitation," the "paragraph B" criteria are not satisfied. The [ALJ] has also considered whether the "paragraph C" criteria are satisfied . . . the evidence fails to establish the presence of the "paragraph C" criteria.

Tr. 20.

It appears that Plaintiff is contesting this finding. The ALJ explained that Paragraph B criteria limitations "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." Tr. 20. At steps four and five, a more detailed assessment is required. Id. The ALJ also determined Plaintiff "has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) with certain exceptions." Id. The ALJ noted that Plaintiff "is primarily seen by providers at the Department of Veterans' Affairs . . . for his physical and mental issues and conditions." Tr. 22. The ALJ stated that she could "not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources." Tr. 25.

The ALJ also determined the Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)" with certain

exceptions. Tr. 20. The ALJ did find that Plaintiff had moderate limitations in all four areas of mental functioning, and these are accommodated in the residual functional capacity. Tr. 25. Notably, "the Social Security Administration . . . and the VA use completely different standards . . . all reasonable doubt in VA disability cases is resolved in favor of the veteran, which is opposite of the process dictated in disability cases (Compare 38 CFR 3.102 with 20 CFR 404.1512 and 416.912)." Tr. 26. The ALJ gave "the VA disability rating great consideration"; however, she found it inconsistent with the overall evidence of record. Id.

The ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 27. This determination was due following consideration of the VE's testimony given Plaintiff's "age, education and work experience" and residual functional capacity. Id. "Transferability of job skills [was] not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is 'not disabled." Id. In short, because Plaintiff "had the residual functional capacity to perform the full range of light work," he was "not disabled." Tr. 28. The VE testified that considering all factors, Plaintiff is able to perform the following light representative occupations: linen grader, marker, and electrode cleaner. Id.

Finally, the ALJ determined Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 6, 2016, through the date of this decision." Tr. 28.

B. Whether the ALJ gave Dr. Brooks' opinion the proper weight; and whether substantial evidence supports the ALJ's findings.

According to Plaintiff, the ALJ's finding that Plaintiff has the residual functional capacity to perform light work is inconsistent with the opinion of Plaintiff's treating physician, Dr. Brooks. ECF No. 16. pp. 10-11. Plaintiff also argues that the ALJ failed to articulate the requisite good cause for discrediting Dr. Brooks' opinion. Id., p. 14.

The ALJ is required to give a treating physician's opinion "substantial or considerable weight" unless 'good cause' is shown to give it less weight. Winschel, 631 F.3d at 1179. Good cause exists "when the: '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241). This Court will not second guess the ALJ about the weight of Dr. Brooks' opinion deserves so long as she articulated a specific justification for it. See Hunter, 808 F.3d at 823.

### 1. Plaintiff's PTSD Treatment at Navy Hospital 2015-2016

A 24-year veteran of the armed forces, Plaintiff primarily received his medical care at the Naval Hospital Pensacola and through its network of outpatient providers around 2014 to 2015. See ECF No. 12-7, generally; Tr. 22. Prior to moving to Florida, Plaintiff was treated at Fort Carson, Colorado.[4] Tr. 679. Over the years, Plaintiff was treated for adjustment disorder, anxiety disorder, depressive disorder, major depression, single episode, other depressive episodes, and post traumatic stress disorder. Tr. 294-95, 297, 299-300, 302-04, 442, 459, 465, 696-98. Plaintiff had various providers[5] for psychiatric counseling, therapy, psychiatric evaluations, and medication management. Tr. 328-39, 472-73.

On May 6, 2016, Plaintiff presented to Dr. Cahill for headaches. Tr. 603. Plaintiff's history of depression was noted but he was "pleasant and cooperative to examination" "was awake, alert" and his "language and comprehension are both intact . . . attentive with good fund of knowledge." Tr. 604. Plaintiff was treated at Emerald Coast Behavior Hospital on

---

[4] Apparently, Plaintiff began the military retirement process in April 2015, which routinely involves full medical review and evaluations. Tr. 688-89, 691.

[5] In 2010 and 2011, Plaintiff received counseling services from Susan Roeth, Richard D. McDowell, and Davida Hoffman. Tr. 338-39. In 2014, Plaintiff was evaluated and treated by Jonathan Olin and John Partrick. Tr. 331-35. In 2016, Plaintiff was evaluated and treated by Melanie Roberson, Glorive Cabino, and Jennifer Brooks, Tr. 328-30.

October 7, 2016, and diagnosed with major depressive disorder but he did not need "acute psychiatric hospitalization." Tr. 504, 509.

On March 21, 2017, Plaintiff asked Dr. Roesgen to continue his mental health care with a psychiatrist while he was seeing Dr. Brooks at the time. Tr. 482. Plaintiff was prescribed Lorazepam. Tr. 485, 487. In May 2017, Plaintiff reported to Dr. Roberson that several medication trials were ineffective including Melatonin, Hydroxyzine, Doxepin, Lunesta, Amitriptyline, and Zoloft. Tr. 467. Dr. Roberson updated Plaintiff's diagnosis to PTSD and prescribed Lexapro. Tr. 424, 430, 437, 440, 469, 487. Plaintiff continued therapy with Dr. Brooks.

Around 2018, Dr. Roesgen noted Plaintiff had an "adjustment disorder with depressed mood" and referred Plaintiff for medication management. Tr. 422. In December 2018, Plaintiff sought to refill his medications but was denied because it had been two years without any follow-up appointments; a new referral to a mental health provider at the naval hospital was necesssary. Tr. 407. Plaintiff saw Dr. Thronson for depression and complained that the medication regimen was not effective. Tr. 401. Dr. Thronson prescribed Ambien for insomnia and Wellbutrin once. Tr. 374-75.

In 2019, on one occasion, Dr. Thronson prescribed Hydroxyzine and Tizanidine. Tr. 374. Plaintiff had no thoughts of harming himself or others. Id.

Plaintiff presented with "no anxiety and no emotional liability. Depression. No sleep disturbances, no decreased functioning ability, and no homicidal thoughts"; a "euthymic" mood; and "normal affect." Tr. 403, 410, 420. Consistently, Plaintiff reported that he "never" needs assistance with reading instructions, pamphlets or other written materials from his doctors. Tr. 397, 402, 409, 412-13, 420, and 423.

During March and April 2019 Plaintiff met with pharmacology and admitted he did not use medication as prescribed but took it when he felt bad, often with alcohol. Tr. 22, 386-93. Plaintiff also admitted that he was not transparent with his mental health provider (Dr. Brooks) about the inappropriate use of the medication. Id.; Tr. 23.

### 2. *Plaintiff's Treatment with Dr. Brooks 2016-2020*

On November 10, 2016, Plaintiff began treatment with Dr. Brooks, a clinical psychologist. Tr. 883-85. At the initial consult, Plaintiff reported his combat deployments and symptoms typically associated with PTSD: disturbing memories and dreams; having physical reactions to those memories or stressful experiences (i.e. heart pounding, trouble breathing, sweating); feeling distant, irritable, and jumpy; difficulty concentrating; anxiety; and depression. Tr. 883; Tr. 23-24. Dr. Brooks noted:

> [Plaintiff's] behavior and speech were within normal limits . . . eye contact was appropriate. Speech was

> normal . . . Mood was anxious with congruent affect.
> Thought content appeared logical, linear, and goal
> directed. Perception appeared intact. Attitude was
> cooperative. Insight and Judgment appeared intact.
> Oriented x3, no evidence of Suicidal or Homicidal
> ideation . . . PTSD symptoms interfering with relationships
> and functioning at work and school.

Tr. 884. Plaintiff had weekly counseling with Dr. Brooks. Tr. 789-969.

Dr. Brooks consistently noted Plaintiff had normal cognitive and intellectual

functioning. Id.; Tr. 24. In nearly every treatment note, Dr. Brooks

documented Plaintiff's behavior, speech, cognitive and intellectual

functioning appeared "normal." Id. Judgment was "good" and "insight" was

fair. Id. His mood was often "depressed." Tr. 870, 872, 874, 866.

By February 2017, Dr. Brooks noted Plaintiff had difficulty in college

because he found himself hypervigilant to every noise, which made it hard

to concentrate. Tr. 866. Still, Plaintiff's behavior, speech, cognitive, and

intellectual functioning continued as "normal"; and his judgment was good

and insight was fair. Id. Over the next several weeks, Plaintiff benefitted from

EMDR, CBT, and supportive therapy intervention. Tr. 808-64. Progress was

"very slow due to the depressive symptom[s]" of Plaintiff's PTSD. Tr. 834,

818. Plaintiff continued with Lexapro. Tr. 500.

On January 4, 2018, Dr. Brooks noted Plaintiff exhibited suicidal

ideology, but this coincided with his admission that he did not comply with

his medication regimen. Tr. 806. Still, Dr. Brooks found that Plaintiff's speech, behavior, cognitive, and intellectual functioning was "normal"; and his judgment was "good" and insight "fair." Tr. 806. These observations were steady throughout Plaintiff's therapy; and he continued to maintain progress. Tr. 760-804. Dr. Brooks agreed to write a letter to have Plaintiff assessed for a mathematics impairment given his difficulties in college and in helping his daughter. Tr. 769, 417. (See Exh. 4F, generally at ECF No. 12-7). By July 2018, Dr. Brooks noted Plaintiff's mood as anxious rather than depressed. Tr. 753, 762-66, 769-71.

On January 10, 2019, Plaintiff reported to Dr. Brooks that the VA vocational rehabilitation counselor informed him they would no longer pay for his schooling based on his performance and to find employment. Tr. 753. Plaintiff expressed a fear of being around people eight hours per day; and Dr. Brooks concurred that he was not emotionally ready for full-time employment. Id. On February 7, 2019, Plaintiff reported that he was unable to find a job. Tr. 750. In March 2019, Dr. Brooks noted that Plaintiff was not suicidal or homicidal. Tr. 397. Plaintiff complained his symptoms made it extremely difficult to work, take care of things at home, or get along with others. Tr. 398, 404. Plaintiff claimed his medications were not working and sought to increase the dosage of Lexapro. Tr. 399.

On April 18, 2019, Plaintiff reported that the VA gave him a 100% disability rating, which would help relieve financial pressures. Tr. 741. On May 2, 2019, Plaintiff reported that he was "giv[ing] up on school" but "agreed to keep school open as an option when his mental health is better." Tr. 737. On May 7, 2019, Dr. Brooks reported that Plaintiff had therapy sessions every other week, would "show up . . . without his medication bottles," seemed "fuzzy about the nature of his medications," and "exhibited dissociative behavior during visits." Tr. 24, 383. Dr. Brooks' notes regularly indicate that Plaintiff can drive safely, carry a weapon, care for his child, and understands the therapy discussions. Tr. 939-69; Tr. 24. Plaintiff regularly refilled his medications and reported the medications were effective in managing his mental health symptoms. Tr. 25.

From August 2019 through May 2020, Dr. Brooks noted Plaintiff's speech, behavior cognitive, and intellectual functioning continued to appear "normal" meaning he "can safely drive, carry a weapon, understand what we are discussing in . . . therapy, care for his child, etc." Tr. 939-69. It is during this period that Dr. Brooks began to document that Plaintiff had "problems with memory and concentration." Id. Nonetheless, over the years of treatment with Dr. Brooks, Plaintiff was able to take several trips including going to his son's wedding, a trip to see his girlfriend's family, to see his

sister's new baby, and to a crowded amusement park and Christmas parade with his daughter. See Exhs. 10F and 4F generally at ECF No. 12-7. Dr. Brooks also noted that Plaintiff's "daughter is safe and cared for, however his isolation and overprotectiveness affect[s] their relationship." Tr. 965.

On September 4, 2019, Dr. Brooks completed a Medical Source Statement stating Plaintiff had "marked limitations" in social functioning; "extreme" limitations based on "episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms"; and "marked" limitations (on a good day) and "extreme" limitations (on a bad day) in understanding, carrying out, and remembering instructions in a work setting. ECF No. 892-93; see also Tr. 26 (emphasis added). The ALJ found the opinion was "not persuasive" particularly because, in treatment notes, Dr. Brooks indicated that Plaintiff's cognitive and intellectual functioning was normal. Tr. 26. Also, Plaintiff can drive safely, carry a weapon, care for his child, and can understand the therapy discussions. Tr. 26. The ALJ stated Plaintiff had not been hospitalized nor had Dr. Brooks ever recommended any such treatment. Tr. 26.

### 3. *Plaintiff's Consultative Examinations*

On June 17, 2019, Dr. Michelle Butler performed a psychiatric review and found that Plaintiff had the following limitations: a mild restriction in understanding, remembering, or applying information; a moderate restriction in interacting with others; a moderate restriction in concentrating, persisting, or maintaining pace; and a mild restriction in adapting or managing himself. Tr. 25, 69-72. Dr. Butler found that Plaintiff had sufficient coping and problem solving for simple and detailed tasks and managing routine stressors. Id. Dr. Butler also opined that Plaintiff would perform best in an environment that requires minimal contact with the public. Id. Dr. Judith Meyers affirmed Dr. Butler's opinion. Tr. 25, 93-95.

In July 2019, Dr. Marc Ferrera, the consultative examiner, evaluated Plaintiff and found:

> In regards to his posttraumatic stress disorder, per patient, he was diagnosed about 6 years ago in which he sees a mental health provider, but was never hospitalized. He has no suicidal or homicidal ideations. He states he gets angry easily. He see[s] a mental health provider every Thursday. . . His last job was back in January 2016 with GE Windmill. He can dress himself, feed himself . . . is able to drive only when needed . . . and he shops as needed . . . well groomed, within normal with no acute distress . . . alert and oriented to person, place, and time. Able to follow simple commands and directions . . .

Tr. 888-90; Tr. 23. Dr. Ferrera did not provide a functional assessment. Id., Tr. 26. Still, the ALJ determined that Dr. Ferrera's exam findings "are persuasive" and "support the residual functional capacity." Tr. 26. The ALJ found these opinions persuasive. Tr. 25.

### 4. The ALJ Afforded Dr. Brooks' Opinion the Proper Weight and there is substantial evidence to support the ALJ's Finding.

The ALJ found that Plaintiff has the residual functional capacity to perform light work. Tr. 20. Although Plaintiff's medical impairments could cause some of the alleged symptoms, his statements concerning the "intensity, persistence, and limiting effects" were "not entirely consistent with the medical evidence and other evidence in the record." Tr. 21-22. Plaintiff had his own method to manage his medications, admitted to drinking more than he should, and was not transparent with his mental health provider on the inappropriate use of his medications. Tr. 22-23. The ALJ detailed the medical record from 2016 and his treatment with Dr. Brooks noting that Dr. Brooks found Plaintiff mildly depressed with normal cognitive and intellectual functioning. Tr. 23-24. This, combined with Plaintiff's ability to be independent, care for his daughter as a single parent, drive safely, carry a weapon, and understand his treatment program, are inconsistent with Dr.

Brooks' medical source statement finding marked and extreme limitations in Plaintiff's functioning. Tr. 24-26.

The ALJ correctly stated that she could not defer or give specific evidentiary weight to prior administrative medical findings and medical opinions. Tr. 25. Although the ALJ did not assign considerable or substantial weight to Dr. Brooks' opinion, she articulated good cause for finding the medical source statement not persuasive. Tr. 26. It is clear the ALJ gave considerable weight to Dr. Brooks' treatment notes and only disregarded the medical source statement because it contradicts Dr. Brooks' own treatment notes, the medical record overall, and Plaintiff's own testimony at the hearing. Tr. 26.

Plaintiff took college courses in person and online, was the primary caregiver for his daughter, prepares simple meals, can drive, and can do some household chores. Tr. 19-20. The ALJ noted Plaintiff's ability to interact with others since he lived with his mother and daughter, then moved in with his girlfriend, was able to travel out of state, took his daughter to an amusement park and the beach, and can shop for himself although he doesn't like crowds. Id.

Ultimately, the ALJ afforded Dr. Brooks' opinion the proper weight and articulated good cause for finding the medical source statement

"unpersuasive." Because there is substantial evidence to support the ALJ's findings, the Commissioner's decision is due to be affirmed.

C. Whether the ALJ Erred in Discounting the VA's Disability Ratings

Next, Plaintiff argues that the ALJ erred by discounting the VA's 100% disability rating in determining Plaintiff had the capacity to perform light work. The Commissioner responds that the agency's adoption of 20 C.F.R. § 404.504, rendered the prior precedent requiring the ALJ to give "great weight" to a VA's determination as no longer binding. The new regulation applies to claims filed on or after March 27, 2017. Under the previous standard, an ALJ was required to give "great weight," although not "controlling weight," to a VA determination. Brown-Gaudet-Evans v. Comm'r of Soc. Sec., 673 F. App'x 902, 903-04 (11th Cir. 2016). Consequently, the ALJ was required to "seriously consider and closely scrutinize the VA's disability determination and . . . give specific reasons" for discounting the determination. Id.

Now, under the new regulations, the Commissioner "**will not** provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you [claimant] are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504 (emphasis added). The ALJ will, however, "consider all of

the supporting evidence underlying the other governmental agency or nongovernmental entity's decision" that is received as part of the social security disability claim. Id. Therefore, it appears the new regulation removes the requirement that an ALJ articulate any reasons for declining to give weight to VA disability ratings.

To the extent that Plaintiff argues that the ALJ did not give due consideration to the VA disability rating, that argument is a non-starter. The districts courts must "consider two questions in deciding whether an ALJ who declined to follow another agency's decision that a claimant was disabled nevertheless properly considered that decision." Noble v. Comm'r of Soc. Sec., 963 F.3d 1317, 1330 (11th Cir. 2020). First, "the Court must ask whether the ALJ's decision shows that she considered the other agency's decision." Id. Then, "if the ALJ discussed the other agency's decision, the second question is "whether substantial evidence in the record support the ALJ's decision to depart from the other agency's decision." Id.

Plaintiff's application was filed on May 20, 2019, which is after March 27, 2017; therefore, the new regulations apply. Here, the ALJ's decision shows that she considered the VA evaluations. In making her findings, the ALJ stated:

> The claimant has a VA disability rating of 100% overall combined rating, consisting of 50% for bilateral pes planus

> and 20% for bilateral sensorineural hearing loss . . . In this case, the VA disability rating is inconsistent with . . . much of the aforementioned objective medical evidence, while the residual functional capacity set forth above is consistent with the overall medical evidence of record, including the VA medical records. Moreover, the claimant's admitted and indicated activities and abilities are not consistent with the VA disability rating. Accordingly, based on the overall evidence of record, the undersigned has given the VA disability rating great consideration, but determines that it is inconsistent with the overall evidence of record.

Tr. 26. In accordance with 20 C.F.R. 404.1504, the ALJ considered the evidence supporting Plaintiff's VA disability rating.

To the extent the ALJ's decision is at odds with the VA evaluations, it was based on substantial evidence in the record. See Maldonado v. Comm'r of Soc. Sec. 861 F. App'x 402 (11th Cir. 2021). Plaintiff testified that he does not wear hearing aids but used closed caption television and texting, although he could hear during the telephonic hearing. Tr. 44-45. He had cataract surgery and uses drops and glasses for his glaucoma but did not have any restrictions on his driver's license and admitted he drives. Tr. 45. Plaintiff testified that he had pain in his shoulders and back; the medication helps but does not alleviate pain; but he could not identify any activities that make that pain worse. Tr. 47. Plaintiff also testified that he goes to counseling for his mental health issues and takes medication, which helps. Tr. 48-49. Despite these conditions, Plaintiff testified that he is the primary care giver

for his seven-year-old daughter, drives to his appointments, can take care of his personal needs, and can make simple meals. Tr. 51.

The ALJ also considered the many treatment records from the VA (see Exhs. 1A, 4A, 1D, 1E, 6E, 3F, 4F, 5F, 6F, 7F, 8F, 10F) and discussed them in great detail in her decision. Tr. 20-27. As narrated above, Plaintiff visited the same hospital and Dr. Brooks for years and received a renewed diagnosis of chronic PTSD and depressive disorders. He did not suffer any mania, delusions, or suicidal or homicidal ideation, intent or plan. Plaintiff's cognitive and intellectual abilities were intact; and he displayed fair insight and good judgment. There was no indication of a severe mental impairment. He could follow instructions, could still drive, and at times indicated the medications were helpful although he was often untruthful with his providers about properly following the medication regimen.

Based on the "objective medical findings[,] and [Plaintiff's] own statements," the ALJ found Plaintiff has the residual functional capacity to perform light work. Tr. 20, 27. Because the ALJ considered the underlying evidence supporting Plaintiff's VA disability rating, the ALJ was not required to review the VA disability rating itself. The Court finds the ALJ did not err in failing to fully credit the VA's findings. The Court's limited review precludes deciding the facts anew or re-weighing the evidence. Moore v. Barnhart, 405

F.3d 1208, 1222 (11th Cir. 2005). Accordingly, the Court declines to remand Plaintiff's case on this basis.

## VI.   Conclusion and Recommendation

It is respectfully RECOMMENDED that the Court AFFIRM the Commissioner's decision because it is supported by substantial evidence and premised on the proper legal principles. 42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d 1439. To the extent Plaintiff's brief includes a motion to the Court to award reasonable attorney's fees, the motion should be DENIED. Finally, the case should be closed.

IN CHAMBERS at Tallahassee, Florida, on November 4, 2021.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).